UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LAMBERT,

                    Petitioner,              Case No. 2:00-cv-72099
                                                    Hon. Arthur J. Tarnow

v.

CONNIE HORTON,

                    Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, AND (2) DENYING CERTIFICATE OF
APPEALABILITY**

On May 9, 1995, when Andrew Lambert ("Petitioner") was eighteen years

old, he shot to death Kelvin Murphy and injured another man. In 1996, a Detroit

Recorder's Court jury found Petitioner guilty of first-degree murder, assault with

intent to murder, and possession of a firearm during the commission of a felony. The

trial court, as it was required to do by Michigan law, sentenced Lambert to life

imprisonment without the possibility of parole for his murder conviction.

After direct appeal in the state courts, Petitioner's first federal habeas petition

was denied by this Court in 2001. See ECF No. 39.

In 2012, the Supreme Court found that Eighth Amendment forbids sentencing

a child to a non-parolable life term of imprisonment. See *Miller v. Alabama*, 567

*Lambert v. Horton*, No. 00-72099

U.S. 460 (2012). In 2016, the Supreme Court held that *Miller* was retroactively applicable to cases on collateral review. *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016).

*Montgomery* having opened the door to a new round of collateral review, Petitioner unsuccessfully sought relief in the state courts. In 2018, he filed for permission in the Sixth Circuit to file this successive petition for writ of habeas corpus under 28 U.S.C. § 2244(b)(2)(A). Petitioner asserted that his mandatory life sentence for first-degree murder is subject to Eighth Amendment review though he was chronologically an eighteen-year-old adult when he committed the crime because modern medical science tells us that a youth of eighteen years of age may nevertheless possess the developmental maturity of a child. The Sixth Circuit issued an order determining that Petitioner made a prima facie showing of an Eighth Amendment violation warranting authorization to file his successive habeas petition. *In re Lambert*, 18-1726 (6th Cir. September 5, 2018).

For the reasons that follow, the Court finds that Petitioner has failed to demonstrate entitlement to review of his Eighth Amendment claim. The Court will also deny Petitioner a certificate of appealability.

## I. Background

Briefly, Anthony Sutton testified at Petitioner's 1996 jury trial that Petitioner, whom he knew, came over to his residence on the date of the shooting. Kelvin

*Lambert v. Horton*, No. 00-72099

Murphy and Michael James were asleep on couches in the living room. Sutton briefly left the room, and a few second later he heard gunshots. Sutton returned to the living room and saw Murphy sprawled on the floor and James lying on a couch with blood coming from his forehead. Sutton called 9-1-1.

Police officers soon thereafter arrested Petitioner at his home. Officer Frazer Adams testified that he questioned Petitioner, and Petitioner admitted shooting Murphy and James. Petitioner explained to Adams that he went to the residence to collect a debt of $2,000 owed to him by Murphy. Petitioner said that when he asked for the money, Murphy reached his hand under a sofa cushion. Petitioner feared Murphy was reaching for a gun, so he fired all of the bullets in his gun at Murphy and James. The jury rejected the self-defense claim and found Petitioner guilty of the offenses indicated above.

At sentencing, without considering the individual circumstances of the crime or Petitioner's age, maturity, or background, the court imposed the non-discretionary life sentence for the first-degree murder conviction as mandated by Michigan law. See ECF No. 83-13, at 9.

Petitioner's counsel sets forth a summary of Petitioner's personal history that might have been considered by the trial court had it possessed discretion to individualize Petitioner's first-degree murder sentence. See ECF No. 82, at 7-10. In brief summary, the circumstances of Petitioner's childhood were tragically typical.

3

He was one of nine children. His father was a heroin addict. Petitioner was regularly beaten by his parents with an extension cord and belt. As a child, Petitioner committed a series of petty juvenile offenses, and at fourteen he joined a neighborhood gang to avoid being jumped. Shortly thereafter, Petitioner dropped out of high school and was kicked out of his home. He turned eighteen on August 13, 1994, and he had a firearm charge pending when he committed the instant offense.

In contrast, Petitioner is now a 43-year-old man. Despite his non-parolable life sentence, Petitioner obtained a GED in prison. He has completed vocational and business education programs. He has engaged in self-improvement classes, including acting as a co-facilitator, and he has participated in the Inside/Out Prison Exchange program. Since the time of his incarceration one of his brothers was shot and killed. Petitioner has served as a tutor, barber, and minister to other inmates. He participates in the American Friends Service Committee's Good Neighbor Project, an organization that pairs inmates with a high school student in a co-mentoring relationship. Finally, in October of 2016, as part of the Michigan Parole Board's lifer review (and despite the fact that they will never have the authority to grant him parole), a COMPAS risk assessment nevertheless determined that Petitioner presented a low risk of reoffending on both the general and violent recidivism scales. See ECF No. 82, at 10.

## II. Discussion

In *Pepper v. United States*, 562 U.S. 476 (2011), the Supreme Court observed:

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams*, 337 U.S. at 247; see also *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").

562 U.S. at 487-88.

Despite this tradition, Petitioner was sentenced to die in prison by the brute fact that he committed the crime of first-degree murder. As a result of the sentencing scheme it created, the Michigan Legislature prevented the state sentencing court from exercising any discretion in determining the length of Petitioner's first-degree murder sentence. Similarly, as a result of AEDPA, Congress has prevented this Court from determining whether a mandatory life sentence is cruel and unusual in violation of the Eighth Amendment where it might be the case that Petitioner possessed the psychological maturity of a child at the time of his crime. These two overlapping legislative schemes have therefore prevented *any* judicial body from *ever* addressing the appropriateness of Petitioner's sentence despite the fact it rested on outdated notions about adulthood.

*Lambert v. Horton*, No. 00-72099

As Judge Stranch observed in a recent opinion:

In a series of cases starting with *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court made clear that children are different from adults for purposes of the Eighth Amendment. First, in *Roper*, the Court held that the Eighth Amendment's "evolving standards of decency" prohibit the imposition of death sentences on those who were under 18 at the time of their crimes. *Id*. at 561, 571. Next, in *Graham v. Florida*, the Court concluded that juvenile offenders who commit non-homicide offenses could not constitutionally be sentenced to life without parole. 560 U.S. 48, 74-75 (2010). Then, in *Miller v. Alabama*, the Court determined that even juvenile homicide offenders could be sentenced to life without parole only after an individualized sentencing hearing and a finding that their crime was not the product of "unfortunate yet transient immaturity." 567 U.S. 460, 479-80 (2012). Finally, in *Montgomery v. Louisiana*, the Court held that *Miller* was retroactively applicable because it announced a new substantive rule—namely, "that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" 136 S. Ct. 718, 734 (2016) (quoting *Miller*, 567 U.S. at 479-80). Taken as a whole, these cases stand for the principle that "[b]ecause juveniles have diminished culpability and greater prospects for reform . . . , 'they are less deserving of the most severe punishments.'" *Miller*, 567 U.S. at 471 (quoting *Graham*, 560 U.S. at 68).

This line of cases relied on three findings about the "significant gaps between juveniles and adults" that make children "constitutionally different from adults for purposes of sentencing." *Id*. "First, children have a 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking. Second, children 'are more vulnerable . . . to negative influences and outside pressures' . . . . And third, a child's character is not as 'well formed' as an adult's . . . ." *Id*. (quoting *Roper*, 543 U.S. at 569-70). These conclusions "rested not only on common sense . . . but on science and social science as well." *Id*.; see also *id*. at 472 n.5 ("The evidence presented to us in [*Miller*] indicates that the science and social science supporting *Roper's* and *Graham's* conclusions have become even stronger.").

*Lambert v. Horton*, No. 00-72099

> Recent research in neuroscience and developmental psychology indicates that individuals between the ages of 18 and 21 share many of these same characteristics. Since *Roper* was decided, scientists have established that "biological and psychological development continues into the early twenties." Elizabeth S. Scott et al., Young Adulthood as a Transitional Legal Category: Science, Social Change, and Justice Policy, 85 Fordham L. Rev. 641, 642 (2016). Brain-imaging studies "have shown continued regional development of the prefrontal cortex, implicated in judgment and self-control[,] beyond the teen years and into the twenties." Alexandra O. Cohen et al., When Does a Juvenile Become an Adult?, 88 Temp. L. Rev. 769, 783 & n.63 (2016) (collecting articles). Researchers have found that in "negative emotional situations," such as conditions of threat, young adults between the ages of 18 and 21 perform significantly worse than adults in their mid-20s—and more like those under 18. Alexandra O. Cohen et al., When Is an Adolescent an Adult? Assessing Cognitive Control in Emotional and Nonemotional Contexts, 27 Psychol. Sci. 549, 559-60 (2016). "It is also well established that young adults, like teenagers, engage in risky behavior, such as . . . criminal activity, to a greater extent than older adults." Scott et al., supra, at 642. In short, empirical research has found that "[a]lthough eighteen to twenty-one-year-olds are in some ways similar to individuals in their midtwenties, in other ways, young adults are more like adolescents in their behavior, psychological functioning, and brain development." Id. at 646.

*Pike v. Gross*, 936 F.3d 372, 384-385 (6th Cir. 2019) (Stranch J., concurring).

Here, as elsewhere, science has outpaced the law. AEDPA makes no allowance for claims based on new scientific developments. The relevant section of AEDPA, 28 U.S.C. § 2244(b)(2), curtails the circumstances under which a successive habeas petition may be considered, and scientific development (that is more accurate knowledge about how the World works) is not one of them:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--

*Lambert v. Horton*, No. 00-72099

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Sixth Circuit's order authorizing the instant petition was only a determination that Petitioner made a prima facie showing that the application satisfied the requirements of this section. See *Ferrazza v. Tessmer*, 36 F. Supp. 2d 965, 973 (E.D. Mich. 1999). "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004) (internal quotation omitted). Such a "'prima facie showing' . . . is not a difficult standard to meet." *Id*. at 432.

The question whether Petitioner's claim actually satisfies the standard for consideration of his successive habeas petition must still be answered by this Court under § 2244(b)(4), which requires the district court to dismiss any claim that does not 'satisf[y] the requirements of this section,'" despite the order of authorization from the Court of Appeals. See *Clark v. Nagy*, 934 F.3d 483, 490-91 (6th Cir. 2019);

*Lambert v. Horton*, No. 00-72099

*In re McDonald*, 514 F.3d 539, 543 (6th Cir. 2008); *Tyler v. Cain*, 533 U.S. 656, 661, n. 3 (2001).

Despite its intuitive force, Petitioner's Eighth Amendment claim simply does not satisfy the requirements of § 2244(b)(2). In *Miller, supra*, the case upon which Petitioner rests his claim, the Supreme Court held that a mandatory sentence of life imprisonment without parole for defendants who were under eighteen years old when they committed their crimes violates the Eighth Amendment. The *Miller* Court was concerned about "imposing a State's harshest penalties" without considering the mitigating factors of youth. *Miller*, 567 U.S. at 477.

The insurmountable problem for Petitioner is that by its own terms *Miller* applies only to cases where the defendant was under the chronological age of eighteen years old when the crime occurred, and Petitioner was eighteen at time of his crime. Though Petitioner asserts that he did not have the maturity of an adult when he committed the crime, "[u]nder the Supreme Court's jurisprudence concerning juveniles and the Eighth Amendment, the only type of 'age' that matters is chronological age." *United States v. Marshall*, 736 F.3d 492, 498 (6th Cir. 2013). Although "[d]rawing the line at 18 years of age is subject . . . to the objections always raised against categorical rules[,] . . . a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Because Petitioner was

*Lambert v. Horton*, No. 00-72099

eighteen years old when he committed the crimes, "he does not qualify for the Eighth Amendment protections accorded to juveniles" under clearly established Supreme Court law. *Marshall*, 736 F.3d at 500. Therefore, although Petitioner's claim may be strengthened by modern scientific developments, he cannot point to a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court to support his claim. Petitioner has therefore not satisfied the requirements of § 2244(b)(2) for filing a successive habeas petition.

The Court is therefore powerless to inquire whether despite his chronological age Petitioner was developmentally a child when he committed his crime resulting in his life sentence. Supreme Court law as it exists now does not allow a court to look to an individual's developmental age when determining whether a non-parolable life sentence was imposed on a child. Accordingly, Petitioner's successive petition for writ of habeas corpus is denied.

### III. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the

*Lambert v. Horton*, No. 00-72099

court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to review of his successive habeas petition under § 2244(b)(2).

The Court notes that since the time Petitioner was granted permission to file his successive petition, the Sixth Circuit in a number of cases identical to Petitioner's has gone as far as denying authorization to file the successive petitions. See *In re McDonald*, 2020 U.S. App. LEXIS 4850, *3 (6th Cir. Feb. 14, 2020) (denying permission to file successive petition based on extension of *Miller* where petitioner was over eighteen at time of crime); *In re Brown*, 2019 U.S. App. LEXIS (6th Cir. Dec. 26, 2019) (same); *In re Maclin*, 2019 U.S. App. LEXIS (6th Cir. Oct. 30, 2019) (same); *In re Hurt*, 2019 U.S. LEXIS 25507 (6th Cir. Aug. 23, 2019) (same); *In re Bryant*, 2019 U.S. LEXIS 19018 (6th Cir. June 25, 2019) (same).

Therefore, a certificate of appealability is denied.

## IV. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, and 2) **DENIES** a certificate of appealability.

**SO ORDERED.**

s/Arthur J. Tarnow
Hon. Arthur J. Tarnow
United States District Judge

Dated: October 22, 2021